UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,
ex rel. JANE DOE,

       Plaintiffs,

v.                                        CASE No. 8:03-CV-1813-T-27TGW

ACCULAB LABORATORIES, INC..
and JOSEPH DEGREGORIO,

       Defendants.

_____

## O R D E R

       This is an action under the False Claims Act, 31 U.S.C. 3729-3733, alleging that Acculab Laboratories, Inc. ("Acculab"). and Joseph T. DeGregorio, its president and owner, submitted false medicare claims.  The case was eventually settled between the relator, who initiated the suit, the United States, and the defendants.  The settlement provided, among other things, that the defendants would pay within 120 days $100,000, plus interest. The defendants defaulted on that obligation. As a consequence. the Government obtained a writ of execution on DeGregorio's real property located at 4464 Hidden River Road, Sarasota, Florida  (Doc. 148).  The

defendant, in response, claimed the property as homestead and therefore exempt from the seizure (Doc. 149).

The defendant's claim of homestead exemption fails for two reasons. First, the defendant expressly agreed in the settlement agreement "not to contest any collection action undertaken by the United States" in the event of default. Second, the evidence that has been submitted does not support the defendant's claim of a homestead exemption for 4464 Hidden River Road.

I.

Originally filed as a qui tam medicare fraud case by a private party under the False Claims Act, the United States intervened in July 2006. Upon information that defendant Acculab's commercial properties were listed for sale, the Government sought prejudgment remedies, including a writ of attachment directing the seizure of defendant DeGregorio's residential property located at 4464 Hidden River Road in Sarasota, Florida.[1] That

---

[1]DeGregorio did not list the Hidden River Road property or his other residential property for sale (Affidavit Allen, S-41, Ex. D, p. 25, ¶74). However, Acculab's commercial properties were eventually sold and those funds were placed in the court's registry.

request was granted and the writs were issued in April 2007 as to the Hidden River Road property and others (Doc. 76-2).

The defendant, who was then represented by counsel, subsequently moved for a hearing on the prejudgment writs of attachment and sequestration, asking the court to consider, among other things, "any claim of exemption" (Doc. 30, ¶¶2, 6). An evidentiary hearing was held before United States District Judge James D. Whittemore in January 2007. While the defendant chose not to testify, he was afforded an opportunity to submit written arguments (Docs. 54, 56, 58). Notably, the defendant's memoranda in support of his opposition to the issuance of the prejudgment writs did not mention a homestead exemption.

Eventually, the parties negotiated a settlement agreement, which took effect on March 14, 2008, in which the defendants agreed to pay to the United States $461,000 (see Doc. 133, p. 2). The agreement specified that defendants DeGregorio and Acculab would pay $361,000 upon settlement from funds held in the court registry, and an additional $100,000, plus interest, within 120 days (see id.). The case was therefore dismissed.

The United States received the first installment payment of $361,000 from funds held in the court registry (Doc. 129). The defendants,

-3-

however, failed to pay the second installment of $100,000, plus interest, as required by the agreement. The Government sent on July 11, 2008, a notice of default to the defendants and, consistent with the settlement agreement, the defendants were granted a five-day grace period to cure the payment default and make the second and final installment payment (Docs. 130, 133). Neither defendant has made payments on the balance.

In the event of default, the agreement set forth the defendants' consent to entry of judgment in favor of the Government and against DeGregorio and Acculab for the unpaid balance of $100,000, plus interest accrued at 5% per annum from the date of the agreement, and 12% interest from the date of default (Doc. 133, pp. 6, 15). At the Government's request, the case was reopened for entry of the consent judgment as a result of the defendants' default and pursuant to the agreement (Doc. 130: Doc. 133, p. 14, ¶14a). Thus, Judge Whittemore entered a consent judgment in the amount of $100,000, plus interest, against the defendants on September 18, 2008 (Doc. 133, p. 2).[2]

---

[2]The Government contends that, from March 14, 2008, through July 12, 2008, interest accrued in the amount of $1,639.34; from July 13, 2008, through July 28, 2010, interest accrued in the amount of $26,468.22; and interest continues to accrue from July 29, 2010, at the rate of 12% per annum, compounded daily (Doc. 141). In addition, the defendants are liable for a 10% surcharge in the amount of $12,810.76. 28 U.S.C. 3011(d).

The Government has asserted that defendant DeGregorio has a
substantial nonexempt interest in the property at 4464 Hidden River Road.
It therefore requested the property be levied upon for payment of the balance
due on the consent judgment in accordance with the Federal Debt Collection
Procedures Act (Doc. 141). Accordingly, on August 16, 2010, I entered an
Order directing the Clerk of Court to issue a writ of execution (Doc. 142), and
levy was made on defendant DeGregorio's property at 4464 Hidden River
Road (Doc. 153).

The defendant, who is currently serving two life sentences for
sexual battery of a minor, has been incarcerated since 2006. It was not until
December 6, 2010, however, that the defendant claimed, for the first time,
that 4464 Hidden River Road is his homestead and therefore protected from
forced sale. Thus, after being served with the notice of levy, the defendant
filed a document in which he claimed entitlement to a homestead exemption
under Florida law and requested a hearing (Doc. 149). The claim, however,
was not signed (id., p. 2). Accordingly, the defendant was sent a new claim
of exemption form (Doc. 151). In the meantime, the Government had filed
a response to the defendant's claim of homestead exemption (Doc. 150). The
defendant was therefore directed to submit the new claim form and to reply

-5-

to the Government's response (Doc. 151). The defendant subsequently filed a signed claim form and a request for a hearing (Doc. 156). He also submitted a response to the Government's opposition to the claim for exemption (Doc. 157). Thereafter, he was told he should not expect an evidentiary hearing, but that he had additional time to file other materials (Doc. 159). The Government then filed a reply to the defendant's response (Doc. 161). The defendant, however, has not submitted any additional materials.

This matter comes before me pursuant to Local Rule 6.01(c)(19). See also 28 U.S.C. 3008.

## II.

The defendants were sued in this case under the False Claims Act for submitting fraudulent claims to the United States with respect to the medicare program. The parties subsequently executed an agreement which, among other things, obligated the defendants to pay the United States $100,000, plus interest. This obligation was set forth in a consent judgment entered by this court (Doc. 133, p. 2). The defendants defaulted on that obligation. Consequently, the United States obtained a writ of execution which levied upon a house owned by DeGregorio at 4464 Hidden River Road

in Sarasota. The defendant asserts that this house is his homestead and therefore is not subject to the Government's levy.

The defendant's claim is foreclosed by the settlement agreement. The agreement expressly provides that DeGregorio agrees "not to contest any collection action undertaken by the United States" (id., p. 15). Here, the defendant is clearly contesting the Government's collection action by asserting the claim of homestead exemption. This is particularly true since the Government disputes that 4464 Hidden River Road is the defendant's homestead, and the defendant opposes the Government's position. Consequently, the defendant is barred by the agreement from contesting the Government's levy on 4464 Hidden River Road.

It is recognized that Florida law holds that, in general, a homestead exemption cannot be waived by an unsecured instrument. Chames v. DeMayo, 972 So.2d 850 (Fla. 2007). Arguably, there may be an exception to this rule in circumstances involving a settlement agreement in a civil case where the homestead owner is represented by counsel. Id. at 862 ("Those who truly wish to waive their homestead exemption ... can do so." ). However, it does not matter whether Florida law would permit a waiver of a

homestead exemption in these circumstances because this issue is governed by federal law.

The agreement expressly provides that it "is governed by the laws of the United States" (Doc. 133, p. 18). In addition to the agreement's specific adoption of federal law, the Fourth Circuit has recently said that "[t]he enforceability of an agreement to settle claims under the FCA [False Claims Act] is governed by federal common law." United States ex rel. Ubl. v. IIF Data Solutions, ___ F.3d ___, 2011 WL 1474783 at *4 (4th Cir. 2011); see United States ex rel. Whitten v. Community Health Systems, Inc., 575 F.Supp.2d 1367, 1384-85 (S.D. Ga. 2008); Coleson v. Inspector General of the Department of Defense, 721 F.Supp. 763 (E.D. Va. 1989).

Under federal law, there is no apparent basis for not enforcing the defendant's agreement that he "would not contest any collection action undertaken by the United States" (Doc. 133, p. 13). The provision is clear and unambiguous. Further, the agreement was signed by the defendant and his lawyer (id., p. 25).

The defendant asserts that he wanted his name stricken from paragraph 14 of the agreement, which is the default of payment paragraph that contains the "will-not contest" provision (Doc. 161, p. 5). He indicates that

-8-

he signed the agreement with the expectation that paragraph 14, as well as other terms, would be amended, but that his lawyer, Virgil L. Light, did not carry out his wishes (id.). That is a matter between the defendant and his former lawyer (which apparently involves on-going litigation). However, it does not affect the enforceability of paragraph 14. That paragraph includes the defendant's name throughout, and the agreement is signed by both the defendant and Light (Doc. 133, p. 25). Accordingly, the defendant is bound by that provision.

For several reasons, the defendant's attempt to escape from paragraph 14 and the "will-not-contest" provision is unavailing. To start with, the global settlement was negotiated with all parties at a mediation on January 4, 2008 (Doc. 121, p. 2). The relator and her attorney, on February 5, 2008, executed the formal agreement (Doc. 133, p. 26). Consequently, it is implausible to think that, when the defendant and Light signed the agreement on February 27, 2008, the terms of the agreement were still subject to negotiation (id., p. 25). See Restatement, Contracts, §26: Fulgence v. J. Ray McDermott & Co., 662 F.2d 1207, 1209 (5th Cir. 1981) ("If a party ... who has previously authorized a settlement changes his mind when presented with the settlement documents, that party remains bound by the terms of the

·-9-

agreement."").    Moreover, it is similarly implausible to think that the Government would agree to delete defendant DeGregorio from the default of payment provision in paragraph 14a, particularly since it was contemplated that the $100.000, plus interest, was secured by property he owned and was "to be made from his own personal funds" (Doc. 121, p. 3 n.1).

In addition, the plausibility of the defendant's (unsworn) assertion that Light in some manner deceived him about changes to the agreement is undercut by the fact that he never made such a complaint in this case for over three years.  The defendant obviously has a copy of the agreement in light of his ability to refer to specific language and provisions in that agreement.  However, the first time he complained about problems with that agreement is when the default provision came into play.

In any event, the defendant is bound by the agreement in light of his signature and that of his attorney on the document.  While the defendant suggests he signed a different version of the agreement, he should have been more careful about what he was signing.  The United States was entitled to rely upon his signature on the document that was submitted to the court and attached to the Consent Judgment.

-10-

Moreover, even if his lawyer inappropriately signed and submitted a version of the agreement which failed to reflect the defendant's requested changes, the defendant is bound by his lawyer's actions. Significantly, the defendant is not contending that his lawyer did not have authority to settle the case. In fact, any such contention would be negated by the defendant's signature on the agreement. The defendant's assertion is limited to the claim that his lawyer did not effectuate some changes in the agreement that he desired, purportedly because of the lawyer's own self-interest. The defendant, however, "cannot now avoid the consequences of the acts or omissions of [his] freely selected agent." Link v. Wabash Railroad Co., 370 U.S. 626, 633-34 (1962). Even if the attorney for a party to a settlement agreement performed inadequately or improperly, the party is nevertheless bound by the terms of the agreement. Baptist v. City of Kankakee, 481 F.3d 485, 490-91 (7th Cir. 2007).

In sum, the agreement contains a provision that precludes the defendant from contesting collection activity. Under federal law, which governs this case, that provision is valid and enforceable. Moreover, the defendant's contention that he told his lawyer that he did not want to be covered by that provision does not avoid its effect. Since the defendant's

claim of a homestead exemption clearly constitutes a contest to the Government's levy upon 4464 Hidden River Road, the invocation of that exemption is barred.

III.

Furthermore, even if the defendant could contest the collection effort by the Government upon 4464 Hidden River Road, the claim of homestead exemption for that property would fail. Thus, the evidence does not show that 4464 Hidden River Road was the defendant's homestead. Rather, the only claim of a homestead exemption that the defendant ever made prior to the Government's levy upon 4464 Hidden River Road was for a different residence that the defendant owned at 3660 Egerton Circle in Sarasota.

As indicated, federal law governs the resolution of the defendant's claim of a homestead exemption. The Federal Debt Collection Procedures Act permits an individual in a proceeding like this to claim state law exemptions. 28 U.S.C. 3014. In such a proceeding, the debtor bears the burden of persuasion. 28 U.S.C. 3014(b)(2).

While federal law sets the procedures, state law governs the exemption. Article X, Section 4 of the Florida Constitution, provides:

-12-

SECTION 4. Homestead; exemptions.—
(a) There shall be exempt from forced sale under process of any court, and no judgment, decree or execution shall be a lien thereon, except for the payment of taxes and assessments thereon, obligations contracted for the purchase, improvement or repair thereof, or obligations contracted for house, field or other labor performed on the realty...

In Florida, the homestead character of a property depends upon an actual intention to reside therein as a permanent place of residence, coupled with the fact of residence. In re Harle, 422 B.R. 310, 314 (M.D. Fla. 2010)(quotations and citations omitted). To claim the homestead exemption, and therefore protect the property from government seizure, the debtor must show that he intended to make the property his homestead and actually maintained the property as his principal residence. Beltran v. Kalb, 63 So.3d 783 (Fla. App. 2011). "The intent to establish a homestead is evidenced by a debtor's specific acts toward creating a permanent abode which are not contradicted by subsequent behavior of the debtor." Colwell v. Royal Intern. Trading Corp., 226 B.R. 714, 719 (S.D. Fla. 1998).

Besides the defendant's belated ipse dixit in this case, there is virtually no evidence supporting the claim of homestead exemption for 4464

Hidden River Road. Despite various circumstances that would prompt such a claim, the defendant has never asserted it until now.

Sarasota County Property Appraiser records submitted by the Government reveal that 3660 Egerton Circle is currently assessed as DeGregorio's tax exempt homestead property under Article VII. §6 of the Florida Constitution (Doc. 158, p. 7). Moreover, the public records show that the Hidden River Road property was never claimed as the defendant's tax exempt homestead (Doc. 76-2, p. 9). While the existence of homestead under Article X. §4 of the Florida Constitution, is not dependent on claiming or failing to claim the property as a tax exempt homestead under Article VII. §6 of the Florida Constitution, In re Newman's Estate, 413 So.2d 140, 142 (Fla. App. 1982). "[t]he fact that property is homestead for ad valorem tax exemption is evidence as to the issue of a claimant's intent that the property is also homestead." Beltran v. Kalb, supra, 63 So.3d at 783 (citations omitted).

More significantly, the defendant in 2007 listed 3660 Egerton Circle as his homestead to be protected in Chapter 13 bankruptcy filings (Doc. 150-3). See Case No. 8:07-bk-11948-MGW (Bkrtcy. M.D. Fla.). Notably, at

-14-

that time, the defendant was incarcerated and in no position to change his homestead in the future.

The defendant attempts to escape the strong probative impact of the bankruptcy claim on the ground that he voluntarily dismissed the bankruptcy case and, therefore, "no such exemption was in fact taken" (Doc. 161, pp. 1-2). However, the dismissal merely shows that he changed his mind about bankruptcy; it does not diminish in any way the defendant's declaration of Egerton Circle as his homestead in bankruptcy court, particularly since the declaration was made under penalty of perjury.

Moreover, Light, the defendant's former counsel who represented him in settlement negotiations in this case and also in the bankruptcy case, filed an affidavit that demonstrates that DeGregorio thoughtfully designated 3660 Egerton Circle, and not 4464 Hidden River Road, as his homestead (Doc. 158). Light declared that, in connection with the bankruptcy proceedings, "DeGregorio confirmed that 3660 Egerton Circle, Sarasota, FL, 34233 was his permanent residence and homestead and directed me to apply the FL constitutional homestead exemption to this parcel" (id., p. 1). The attorney stated further, "DeGregorio spent more than an hour reviewing every page of the [bankruptcy] petition and we discussed the classification of his

property at length" (id., p. 2). Importantly, Light asserted that the defendant considered Egerton Circle as "his family home and the most important property he desired to save" (id.).

In addition, the Government notes that there was a prior point in this case where it would have been appropriate for the defendant to assert a claim of homestead exemption for 4464 Hidden River Road, and he did not do so (Doc. 150). In November 2006, a prejudgment writ of attachment was issued for several properties owned by the defendant, including 4464 Hidden River Road. Subsequently, the defendant, who was represented by counsel other than Light, challenged the attachments. An evidentiary hearing was conducted, and the defendant, through counsel, filed both pre- and post-hearing memoranda (Docs. 36, 63). In neither memorandum did the defendant claim a homestead exemption from attachment for 4464 Hidden River Road.

The Government contends that the failure to assert the exemption in the memoranda constitutes a waiver of the exemption (Doc. 150). The Government provides no authority for this contention of waiver, and it is otherwise unpersuasive. Nevertheless, the failure of the defendant, through counsel, to claim a homestead exemption for 4464 Hidden River Road while

-16-

it was subject to attachment provides further evidence that the defendant did not view that property as his homestead.

The evidence shows, in short, that, until the Government specifically levied on 4464 Hidden River Road, the defendant has never claimed that that property was his homestead. Moreover, prior to that time, whenever the defendant was called upon to designate a homestead, he designated 3660 Egerton Circle.

The defendant has adduced no evidence which is even close to overcoming this showing. Besides his conclusory assertion of a homestead, he merely points to the fact that he was arrested at the Hidden River Road property during the execution of a search warrant (which coincidentally I authorized). He adds that the search warrant affidavit refers to 4464 Hidden River Road as the defendant's residence.

The reference in the search warrant affidavit to 4464 Hidden River Road as the personal residence of DeGregorio carries no weight. In the first place, the affiant, who was an agent with the Department of Health and Human Services, was not purporting to assess the defendant's homestead status; she was merely specifying where the defendant stayed.

Further, the defendant owned other properties, including 3660 Egerton Circle. The affidavit regarding 4464 Hidden River Road also referred to the house on Egerton Circle as a residence owned by the defendant (Case No. 8:06-MJ-1201-TGW, p. 16, ¶34f).

In addition, a search warrant was issued for 3660 Egerton Circle. The affiant in that case was the same one as in the 4464 Hidden River Road matter. She stated in that affidavit that "[t]he personal residence of Degregorio is located at 3660 Egerton Circle, Sarasota, Florida." Case No. 8:06-MJ-1214-EAJ, p. 2, ¶5. In light of that statement, the defendant's claim of a homestead exemption gets no support from the criminal investigator's statement that 4464 Hidden River Road was also a personal residence of the defendant.

The reference to his arrest at 4464 Hidden River Road and to the statement in the search warrant affidavit appears to be the best that the defendant can do to substantiate his claim of homestead exemption. Several months have passed since his last submission and he has proffered nothing else.

It is noted that the defendant has requested a hearing. However, an oral hearing is not warranted. "Certainly the Constitution does not require

-18-

oral argument in all cases where only insubstantial or frivolous questions of law, or indeed even substantial ones, are raised." Federal Communications Commission v. WJR, The Goodwill Station, 337 U.S. 265, 276 (1949).

The Federal Debt Collection Procedures Act provides that, upon request, a court "shall hold a hearing" on "the probable validity of any claim of exemption by the judgment debtor." 28 U.S.C. 3202(d)(1). In this case, based on the submissions, there is no probable validity to the claim of homestead exemption as to the Hidden River Road property. Accordingly, an oral hearing is not required. United States v. Miller, 588 F.Supp.2d 789, 797 (W.D. Mich. 2008)("Although the Act states that the court 'shall hold a hearing' at the debtor's request, courts have denied a hearing where ... the objection is plainly without merit.").

Moreover, the defendant has received a hearing on his claim of exemption in that his submissions have been closely analyzed in light of all the evidence in the record, sealed and unsealed, as well as the search warrant cases that have been cited. There is no reason to think that an oral hearing would add anything to my understanding of the issues in this case.

IV.

In sum, for these reasons, the defendant's claim of homestead exemption fails. In the first place, the defendant is barred from asserting the exemption due to the provision in the settlement agreement that he would not contest any collection action undertaken by the United States. In addition, the defendant has come forward with no probative evidence showing that he intended that 4464 Hidden River Road would be his homestead; the evidence, rather, compels the conclusion that, whenever the defendant designated a homestead, he designated 3660 Egerton Circle.

It is, therefore, upon consideration

ORDERED:

That defendant Joseph DeGregorio's Claim for Exemption and Request for Hearing (Doc. 149) be, and the same is hereby **DENIED**.

DONE and ORDERED at Tampa, Florida, this 4th day of August, 2011.

Thomas G. Wilson

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE

-20-